## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZORA LABS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>DELOITTE CONSULTING, LLP,<br><br>    Defendant. | Civil Action No. 25-4930<br><br><br>**JURY TRIAL DEMANDED** |

## <u>VERIFIED COMPLAINT</u>

Plaintiff Zora Labs, Inc. for its Complaint against Defendant Deloitte Consulting, LLP hereby alleges as follows:

1.   This is an action for trademark infringement, unfair competition, cyberpiracy and unauthorized use of Plaintiff's trademark in a domain name, and deceptive trade practices under the Lanham Act and the laws of New York.

## <u>THE PARTIES</u>

2.   Plaintiff Zora Labs, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 110 Greene Street, 803A, New York, NY 10012 ("Zora" or "Plaintiff" where this term may include any agent, affiliate, employee, independent contractor and related).

3.   Upon information and belief, Defendant is a limited liability partnership organized under the laws of the State of Delaware and with its National Office headquartered in New York County at 30 Rockefeller Plaza, 41st Floor, New York, NY 10112-0015 ("Deloitte" or

"Defendant" where this term may include any agent, affiliate, employee, independent contractor and related).

## JURISDICTION AND VENUE

4.     This case includes causes of action for infringement of federally registered trademarks under section 32 of the U.S. Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114; unfair competition under section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); cyberpiracy and unauthorized use of Plaintiff's trademark in a domain name in violation of the Anticybersquatting Consumer Protection Act ("ACPA") under section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d)(1)(A); and state and common law claims based on the facts underlying the aforementioned federal causes of action: unfair and deceptive trade practices under New York's General Business Law § 349 and trademark infringement and unfair competition under New York common law.

5.     This Court has original subject matter jurisdiction over the claims asserted herein under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1338(b).

6.     This Court has supplemental jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1367 because the facts underlying Plaintiff's state law claims and common law claims are so related to the facts underlying Plaintiff's federal trademark infringement and unfair competition claims that Plaintiff's state law and common law claims form part of the same case or controversy as Plaintiff's federal claims.

7.     This Court has personal jurisdiction over Defendant because (i) Deloitte is a Delaware limited liability partnership, which means that its citizenship is determined by the citizenship(s) of each of its partners, at least some of whom, upon information and belief, reside and work in New York, including in New York County; (ii) Deloitte's website indicates that it

National Office (*i.e.* headquarters) is located in New York as shown in the screenshot below[1]; and (iii) Deloitte transacts business in the State of New York.



8.      According to an online query of the New York State Department of State Division of Corporations (at https://apps.dos.ny.gov/publicInquiry/), at all times herein, Deloitte Consulting LLP has been and continues to be an active company registered in this judicial district, in New York County, as of February 25, 2004, with a DOS ID# of 3018149 and an address of 30 Rockefeller Plaza, New York, NY, United States, 10112.

9.      Further, according to online filings available from PACER in other Southern District of New York cases in which Deloitte was a defendant, Deloitte filed answers in such cases and/or did not contest personal jurisdiction.

10.      Venue is proper in this Court as to the Defendant pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)(2), because, on information and belief, the actions or omissions giving rise to the claims occurred and continue to occur in this district including because Defendant has

---

[1] https://www.2.deloitte.com/us/en/footerlinks/office-locator.html?icid=bottom_office-locator

committed and continues to commit acts of infringement in, and has engaged in related unfair and deceptive trade practices in this district, and because Deloitte is located in and conducts business in this district.

## **FACTUAL ALLEGATIONS**

### A. **Background on Zora and the ZORA Marks**

11.    Zora Labs, Inc. is one of the most prominent web3 platforms in which users can create, buy, sell, curate and view social media content on the blockchain. Zora provides innovative AI-driven methods, including for consumers to use in creating on chain media and undertaking the related cryptographic token transactions. Zora-created AI has been provided to consumers to, among other things, create non-fungible tokens ("NFTs") and fungible ERC-20 tokens.

12.    Zora has used its ZORA mark in connection with its software-related goods and services, and cryptocurrency-related services, for more than five years – since at least as early as February 2020 and March 2020, respectively.

13.    Numerous record-breaking NFT transactions have been assembled and sold on Zora's platform. Examples include the Doge NFT ($4 million), the primary TikTok NFT, Mad Realities, James Jean ($6 million) Poolsuite, Punks House, and the Warhol Foundation. Moreover, in 2022, Zora ran a groundbreaking Series C capital financing, receiving $50 million in funds from investors. Evidence of these examples of Zora's renown is attached hereto as Exhibit A.

14.    Furthermore, Zora has an expansive following on its social media accounts, including more than 252,000 followers on X and 41,400 followers on Instagram. *See* Exhibit A at 2-3.  Zora's posts about its plan to launch and launch in April 2025 of its token $ZORA received millions of social media views. *See* Exhibit A at *e.g.*, 39 (March 3 post), 41 (April 20 post).

15.    Zora is also well-recognized for its offerings in connection with artificial intelligence – specifically, the AI it has created and provided to consumers to use in their creation of blockchain cryptographic tokens, in addition to providing a platform that is synergistic with the use of third-party AI.

16.    Zora has been overtly offering AI tools for use by its consumers since at least as early as March 2024.

17.    Zora's AI tools have included a product called "Canvas", allowing for the creation of NFTs using Zora-provided AI.  Zora has provided this AI tool in association with its ZORA Marks.

18.    Zora also offers an AI tool for use by consumers in designing and creating fungible tokens on the blockchain, and which it also provides in connection with its ZORA trademark.

19.    Indeed, multiple media outlets covered Zora's formal launch of its AI-driven features. Examples of that use and third-party coverage of the same are attached hereto as Exhibit B.

20.    Zora has also marketed its AI offerings, including on its social media, examples of which are set forth in Exhibit C.

21.    As a result of Zora's widespread use and significant investment of time and money in advertising and promotion of its mark in connection with its software-related goods and services, including its AI technologies for example, for creating collectibles and digital assets authenticated by blockchain cryptographic tokens, or for creating digital media content, and its cryptocurrency-related services, the ZORA mark has become a distinctive indicator of such goods and services, has acquired a favorable reputation among relevant members of the purchasing public, and has become a valuable symbol of Zora's goodwill.

22.     Zora is the owner of multiple federal U.S. registrations for ZORA, an additional published application for another soon-to-be-registered ZORA mark, and an allowance for a ZORA-comprising mark.

23.     One such mark is: ZORA, Registration No. 7,692,850, registered February 18, 2025, covering:

> Downloadable mobile applications for allowing individuals to come together to create, buy, and sell collectibles and digital assets containing artwork authenticated by non-fungible digital tokens (NFTs); Downloadable computer application software for mobile phones, tablets, and other handheld devices namely, software for allowing individuals to come together to create, buy and sell collectibles and digital assets containing artwork authenticated by non-fungible digital tokens (NFTs); downloadable computer software development tools to enable people to create website content in Class 9 (First Use in Commerce: September 10, 2024),

> Cryptocurrency exchange services featuring blockchain; Cryptocurrency exchange services in Class 35 (First Use in Commerce: March 2, 2020), and

> Providing use of non-downloadable web-based applications for allowing individuals to come together to create, buy and sell collectibles and digital assets containing artwork authenticated by non-fungible digital tokens (NFTs); providing use of non-downloadable computer software development tools to enable people to create website content in Class 42 (First Use in Commerce: February 21, 2020);

24.     Another of Zora's registered marks is for ZORA, Registration No. 7,724,323, registered March 11, 2025, covering:

> Downloadable mobile applications for allowing individuals to come together to buy and sell digital tokens that represent real world goods, and downloadable computer software development tools to enable people to create and operate their own decentralized autonomous organizations; Downloadable computer application software for mobile phones, namely, software for allowing individuals to come together to buy and sell digital tokens that represent real world goods, and downloadable computer software development tools to enable people to create and operate their own decentralized autonomous organizations; Downloadable computer application software for mobile phones, tablets, and other handheld devices, namely, software for allowing individuals to come together to buy and sell digital tokens that represent real world goods, and downloadable computer software development tools to enable people to create and operate their own decentralized autonomous organizations in Class 9 (First Use in Commerce: September 10, 2024),

Cryptocurrency exchange services featuring blockchain; Cryptocurrency exchange services in Class 36 (First Use in Commerce: March 2, 2020), and

Providing temporary use of non-downloadable web-based decentralized applications (DApps) for allowing individuals to come together to buy and sell digital tokens that represent real world goods, and providing temporary use of on-line non-downloadable software development tools to enable people to create and operate their own decentralized autonomous organizations in Class 42 (First Use in Commerce: February 21, 2020);

25.    One of Zora's allowed U.S. marks is ZORA LABS, Serial No. 98/355,107, filed January 12, 2024, allowed March 18, 2025, covering:

Downloadable mobile applications for allowing individuals to come together to create, buy, and sell collectibles and digital assets containing artwork authenticated by non-fungible digital tokens (NFTs); Downloadable computer application software for mobile phones, tablets, and other handheld devices namely, software for allowing individuals to come together to create, buy and sell collectibles and digital assets containing artwork authenticated by non-fungible digital tokens (NFTs); downloadable computer software development tools to enable people to create website content in Class 9,

Cryptocurrency exchange services featuring blockchain; Cryptocurrency exchange services in Class 35, and

Providing use of non-downloadable web-based applications for allowing individuals to come together to create, buy and sell collectibles and digital assets containing artwork authenticated by non-fungible digital tokens (NFTs); providing use of non-downloadable computer software development tools to enable people to create website content in Class 42.

26.    All of the foregoing marks include within their scope the provision and use of AI, including AI created and provided by Plaintiff Zora, in, *e.g.*, the creation of collectibles and digital assets, as well as downloadable or non-downloadable applications that provide use of AI for creation of collectibles and digital assets and website content, as well as for the other stated purposes.

27.    Another of Zora's published U.S. marks, that is in use, is ZORA, Serial No. 98/910,185, filed December 18, 2024, published May 27, 2025, covering:

Downloadable mobile applications using artificial intelligence (AI) to assist individuals to create collectibles and digital assets containing artwork authenticated by non-fungible digital tokens (NFTs); Downloadable computer application software for mobile phones, tablets, and other handheld devices namely, software using artificial intelligence to assist individuals to create collectibles and digital assets containing artwork authenticated by non-fungible digital tokens (NFTs); downloadable computer software development tools using artificial intelligence (AI) to enable people to create website content in Class 9 (First Use in Commerce: September 10, 2024), and

Providing on-line non-downloadable software using artificial intelligence (AI) to assist individuals to create collectibles and digital assets containing artwork authenticated by non-fungible digital tokens (NFTs); providing use of non-downloadable computer software development tools using artificial intelligence (AI) to enable people to create website content in Class 42 (First Use in Commerce: March 5, 2024).

28.     The foregoing registrations and applications set forth in the prior paragraphs are valid and subsisting. Documents downloaded from the U.S. Patent and Trademark Office Trademark Status and Document Retrieval database reflecting the current status and ownership of the same, or registration certificates of the same, are attached hereto as Exhibit D.

29.     Plaintiff Zora also holds common law rights in the ZORA mark in connection with the goods and services identified for its U.S. trademark application for ZORA, Serial No. 98/910,185, since at least as early as March 5, 2024 (for class 42 services) and at least as early as September 10, 2024 (for class 9 goods), as well as in all of the other goods and services identified in the aforementioned registrations and allowed application.

30.     Zora also similarly provides under the ZORA mark, and holds common law rights in the ZORA mark at least as early as the dates held in connection with its Serial No. 98/910,185, in connection with at least downloadable applications using artificial intelligence (AI) to assist individuals to create collectibles and digital assets containing digital media content authenticated by blockchain cryptographic tokens; Downloadable computer application software for mobile phones, tablets, and other handheld devices namely, software using artificial intelligence to assist individuals to create collectibles and digital assets containing artwork authenticated by blockchain

cryptographic tokens; downloadable computer software development tools using artificial intelligence (AI) to enable people to create digital media content; and for providing on-line non-downloadable software using artificial intelligence (AI) to assist individuals to create collectibles and digital assets containing artwork authenticated by blockchain cryptographic tokens; providing use of non-downloadable computer software development tools using artificial intelligence (AI) to enable people to create digital media content.

31.    In addition to these common law rights, registrations, and allowed or soon to be registered applications in the United States (all of the foregoing, collectively, the "ZORA Marks"), Zora owns registrations for ZORA and ZORA LABS in the United Kingdom (Registration Nos. UK00004075149 and UK00004075123, respectively), European Union (Registration Nos. 019054195 and 019054196, respectively), and Indonesia (Registration Nos. IDM001280200 and IDM001319221), as well as a pending application Serial No. 2369993 for ZORA in Canada. All of the registrations and applications set forth above provide evidence of Plaintiff's ownership of the ZORA Marks, of the validity of the ZORA Marks, and of Plaintiff's exclusive right to use the ZORA Marks in U.S. commerce in connection with at least the goods and services set forth in those registrations and applications, and those goods and services that a consumer might perceive Plaintiff Zora likely to offer or which are in competitive proximity to the goods and services currently offered by Plaintiff in connection with its ZORA Marks. This competitive proximity is also informed by the industry's and consumers' recognition that cryptocurrency offerings (such as those of Plaintiff) have been deeply intertwining and converging over the past years with AI-related offerings (such as those of Plaintiff and Defendant). *See* Exhibit S comprising recognition of this convergence from Andreessen Horowitz—one of the most successful venture capital firms,

Grayscale—a prominent crypto asset manager, Lenovo, and Forbes; *see also* Exhibit B (recognizing also the convergence of AI and crypto, and AI and NFTs).

32.    In addition, Plaintiff Zora owns the domains <<OURZORA.COM>> and <<ZORA.CO>>.

33.    Zora registered and began using the <<OURZORA.COM>> domain in January 2020.

34.    Zora later in 2020 had the <<OURZORA.COM>> domain redirect to its <<ZORA.CO>> domain through which it continues to offer various goods and services under the ZORA Marks.

35.    Zora takes significant effort to enhance and protect the goodwill it has achieved in its business and in its trademarks, including by enforcing its rights in its marks, and stopping the unauthorized third-party use of its trademarks.

**B.  Defendant's Infringing Use of Plaintiff Zora's ZORA Marks**

36.    On March 18, 2025, Deloitte issued a press release announcing the launch of an AI platform it called "Zora AI" in connection with artificial intelligence-related services.

37.    On information and belief, Deloitte also registered, or caused to be registered, the domain <<ZORA.AI>>.  *See* Exhibit E (WHOIS domain registration information for ZORA.AI) and Exhibit G (evidence of redirection of <<ZORA.AI>> to a Deloitte www2.deloitte.com… domain as of February 16, 2025).

38.    The <<ZORA.AI>> domain is identical to Plaintiff's <<ZORA.CO>> domain except for the domains having different TLDs (*i.e.* ".ai" and ".co").

39.    According to the Wayback Machine archives, the domain <<ZORA.AI>> did not reflect any Deloitte content on it in any of its archived captures and repeatedly evidenced that

<<ZORA.AI>> was available for purchase through the time of its archived capture of the domain on August 18, 2024. Exhibit F.

40.    The Wayback Machine's next archived capture of the <<ZORA.AI>> domain occurred on February 16, 2025 and was the first of the Wayback Machine captures reflecting that the domain <<ZORA.AI>> automatically redirected to the Deloitte website: https://www2.deloitte.com/us/en/pages/consulting/solutions/zora-generative-ai-agent.html. Exhibit G.

41.    On information and belief, Deloitte never published any of its own content, including regarding the artificial intelligence offering it called "Zora AI", directly on the domain <<ZORA.AI>>.  *See, e.g.*, Exhibits F and G.

42.    On information and belief, Deloitte only ever used the domain <<ZORA.AI>> to redirect any visitors of the <<ZORA.AI>> webpage, automatically to the Deloitte website marketing the offerings Deloitte calls  "Zora AI" or "Zora".  Exhibits F and G; *see also* Exhibit H, reflecting the Deloitte website (www2.deloitte.com…) to which <<ZORA.AI>> redirected on May 30, 2025.

43.    On information and belief, visitors of the <<ZORA.AI>> webpage included and continue to include consumers of or prospective consumers looking for Plaintiff Zora's goods and services.

44.    On information and belief, these visitors who were looking for Plaintiff's website and/or goods or services, are redirected to Deloitte's website that is marketing "Zora AI" and using Plaintiff's ZORA Mark.

45.     On information and belief these redirected visitors have the false impression that Deloitte's "Zora AI" is sponsored, authorized, licensed or endorsed by, affiliated with, or otherwise provided by or in coordination with Plaintiff Zora.

46.     According to Deloitte's website, "Zora AI" is a "digital workforce" offering generative artificial intelligence services to provide support to business-centric services and data analytics, including to "translate insights into easily consumable formats…" and, among other actions, to complete "transaction processing." Exhibit H.

47.     Deloitte promotes its AI-related services on its website using either "Zora AI™" or just "Zora" in connection with the "agents" that make up the generative component of the product. Exhibit H.

48.     Defendant also promotes its artificial intelligence services using "Zora AI™" and "Zora" on social media, including on LinkedIn and on YouTube. Exhibit I.

49.     On information and belief, the consumers and prospective consumers of Plaintiff Zora and the consumers and prospective consumers of Deloitte's AI-related offerings under the "Zora" and "Zora AI" marks, are at the least, overlapping.

50.     According to an online search of the USPTO Trademark Database, Deloitte and its affiliates own at least *fifty* U.S. trademark applications and registrations for its name and its products. Exhibit J.

51.     Deloitte has not applied to the U.S. Trademark Office to register a ZORA or ZORA AI trademark. *See* Exhibit J (and the absence of any ZORA or ZORA-comprising marks).

52.     On information and belief, Deloitte's use of the "TM" symbol in "Zora AI™" without having applied in the United States for a service mark for ZORA or ZORA AI is because Deloitte recognized that a trademark application for "ZORA" or "ZORA AI" in connection with

its artificial intelligence-related goods and services would not be successful given one or more of: Plaintiff Zora's long-term renown and Plaintiff's earlier use-based rights in and earlier-registered and earlier-allowed ZORA Marks – including for artificial intelligence-related goods and services.

53.    The ZORA Marks are well-recognized indicators of Plaintiff Zora and the goods and services Plaintiff offers thereunder.

54.    Plaintiff Zora's business and the ZORA Marks have acquired significant goodwill.

55.    On information and belief, Defendant Deloitte used and uses the "TM" symbol with "Zora AI" to create in the mind of a consumer that there was or is a business relationship between Plaintiff and Defendant with regard to "Zora AI" (*e.g.*, that Plaintiff licenses, endorses, is a partner to or affiliated with Deloitte, and/or is the provider of underlying technology for Zora AI), even though Plaintiff Zora is not and does not.

56.    Plaintiff Zora, however, has worked with and been a client of Deloitte through Deloitte Tax, since 2022.  Since then, Plaintiff has been a client for tax advisory and preparation services, as well as on-call accounting services.

57.    On information and belief, Defendant Deloitte was at least generally aware of Plaintiff Zora, its commercial offerings, and its trademarks before Plaintiff became a Deloitte Tax client.

58.    On information and belief, Defendant was aware of Plaintiff Zora, its commercial offerings, and its trademarks at least as of when Plaintiff Zora became a Deloitte Tax client.

59.    On information and belief, Defendant has knowingly and willfully capitalized on Plaintiff's reputation and the goodwill of Plaintiff's business and the ZORA Marks to confuse or deceive consumers as to at least Plaintiff's endorsement, license or sponsorship of, or affiliation with, or as a provider of underlying technology for Defendant's artificial intelligence services.

60.     On information and belief, Defendant has knowingly and willfully capitalized on Plaintiff's reputation and the goodwill of Plaintiff's business and the ZORA Marks to drive consumers or would-be consumers of Plaintiff's goods and services to Defendant's website and artificial intelligence services marketed by Defendant under Plaintiff's ZORA trademark.

61.     The false association or implication of a connection between Defendant and Plaintiff and/or Plaintiff's ZORA Marks has and continues to irreparably harm the reputation and goodwill associated with Plaintiff's business and Plaintiff's ZORA Marks.

## C. Plaintiff's and Defendant's Communications About Defendant's Ongoing Infringement

62.     Plaintiff learned of Defendant's unauthorized use of ZORA and the domain <<ZORA.AI>> in connection with its AI-related offerings, and shortly thereafter on February 14, 2025, sent a cease and desist letter to Defendant via Abdi Goodarzi, identified as Head of Gen AI Products, Innovations and New Business and part of the "Zora AI leadership team" on the Deloitte website, via e-mail and overnight carrier, and Ben Campbell – the then-identified General Counsel for Deloitte – also via e-mail and overnight carrier. Exhibit K.

63.     On February 24, 2025, having received no response from Deloitte, Plaintiff resent its February 14, 2025 letter via e-mail again to Abdi Goodarzi, and other Deloitte employees identified as part of the "Zora AI leadership team" on the Deloitte website, namely Nitin Mittal (Global AI Leader) and Ranjit Bawa (US Chief Strategy and Technology Officer).  Plaintiff also included Richard Punt (Deloitte Global Legal Leader) and the following Deloitte personnel identified as working on AI technologies at Deloitte, on that email: Ashok Divakaran, Arjun Krishnamurthy, and Chip Kleinheksel (Global US Chief Technology Officer and US Enterprise Performance AI Leader). Exhibit L.

64.     On that same day, having received a bounceback from the email address used for Richard Punt, Plaintiff resent the e-mail chain and February 14, 2025 letter to Richard Punt at rpunt@deloitte.co.uk.

65.     Also on February 24, 2025, Kavi Ramkissoon, Assistant General Counsel for Deloitte, advised that Deloitte was in receipt of the February 14, 2025 letter and was "reviewing the contents thereof". Exhibit M.

66.     On March 4, 2025, Kavi Ramkissoon provided via email a response to the February 14 letter, declining to stop using Plaintiff's ZORA mark and declining to rebrand from "Zora AI". Exhibit N.

67.     Since receiving the February 2025 letter, Defendant has not only persisted in using ZORA and ZORA AI in connection with its artificial intelligence services, but also expanded its marketing and business under Plaintiff's ZORA trademark – announcing a partnership with SAP as recently as May 20, 2025. Exhibit O.

68.     Plaintiff sent another demand letter on May 27, 2025, reiterating and expanding upon its objections, and seeking Defendant cease all use of Plaintiff's ZORA trademark and rebrand from "Zora AI".  Exhibit P.

69.     Defendant, Kavi Ramkissoon, responded via e-mail on May 29, 2025 with an acknowledgement of receipt of the letter and stating, "we are reviewing the contents thereof". Exhibit Q.

70.     Shortly thereafter, Plaintiff's in-house counsel and Director of Finance spoke with Plaintiff's Deloitte tax-advisor, Rob Massey, about Deloitte's improper use of ZORA and ZORA AI, the unsatisfactory nature of Deloitte's response to that date, and that Plaintiff intended to seek

intervention of the Court in the absence of Deloitte's agreement to cease use of Plaintiff's ZORA Marks.

71.     Rob Massey asked Plaintiff's in-house counsel and Director of Finance to hold off on taking further action to give him an opportunity to discuss the matter internally at Deloitte.

72.     On June 4, 2025, Rob Massey advised Plaintiff's in-house counsel and Director of Finance that he spoke with Kavi Ramkissoon, and that Kavi Ramkissoon would be responding shortly regarding Plaintiff's May 27, 2025 letter.

73.     On June 5, 2025, outside counsel for Plaintiff followed up with Kavi Ramkissoon, asking for a response by close of business on June 6, 2025 as to whether Deloitte would be rebranding and ceasing use of the ZORA Marks. Exhibit R (page 1, bottom email).

74.     Later that day, Kavi Ramkissoon advised that Deloitte was working with its outside counsel and would be in touch in the near future. Exhibit R (page 1, top email).

75.     Upon failing to receive any further or sufficient response, Plaintiff filed this Complaint to protect the goodwill in its business and its valuable intellectual property rights.

**D. Defendant Deloitte's Similar Infringement of Another Deloitte Business Associate's Trademarks**

76.     On information and belief, this is not the first time Defendant has improperly used the trademark of a company with which it was in a business relationship.

77.     According to the complaint filed by Cognitive Scale, Inc. ("Cognitive"), against Deloitte Consulting LLP, in Case No. 1:20-cv-01072-JRN (W.D. Tex. October 26, 2020), Cognitive alleged Deloitte infringed Cognitive's trademarks, including its trademark CORTEX – which Cognitive used in connection with AI-related goods and services, including what it referred to as an "augmented intelligence platform" and "augmented intelligence software". *See, e.g.*, ECF No. 1 (Complaint), ¶¶8-9.

78.     Among other things in the complaint, Cognitive asserted that Deloitte merely appended "AI" to the end of Cognitive's CORTEX mark, and used the mark CortexAI in connection with offering an AI-related product that competed with Cognitive's own AI-related CORTEX offerings.  *See, e.g.*, ECF No. 1 (Complaint), ¶¶29-30.

79.     In the complaint, Cognitive also alleges that Cognitive and Deloitte had a business relationship prior to Deloitte using the CORTEX AI mark to compete with Cognitive and that at least because of that business relationship, Deloitte was aware of Cognitive's CORTEX platform. *See, e.g.*, ECF No. 1 (Complaint), ¶¶26, 29.

80.     The case proceeded without Defendant Deloitte answering the complaint, and was, on information and belief, settled by the parties.  *See, e.g.*, ECF No. 9 (February 26, 2021, Voluntary dismissal with prejudice); ECF No. 10 (March 1, 2021, Final judgment).

81.     On information and belief, Cognitive since ceased operating as a going concern.

## CAUSES OF ACTION

### COUNT ONE
### TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT
### (15 U.S.C. § 1114)

82.      Plaintiff repeats and re-alleges all paragraphs set forth in this complaint as if full set forth herein.

83.     Plaintiff owns all rights in its valid and legally protected ZORA Marks, including Registration Nos. 7,692,850 and 7,724,323 for ZORA in the United States. Plaintiff has used ZORA in connection with its software-related services continuously since at least as early as February 2020, with its software-related goods since at least as early as September 2024, and in connection with its cryptocurrency exchange services since at least as early as March 2020.  The

registered goods and services under the ZORA Marks include those that are achieved through use of AI, including AI as created, marketed and commercialized by Plaintiff.

84.    As a result of Plaintiff's widespread use, significant investment of time and money in advertising and promotion of its business and ZORA Marks in connection with its goods and services, the Zora business and the ZORA Marks have acquired a favorable reputation among relevant members of the purchasing public and have become a valuable symbol of Plaintiff's goodwill.

85.    Zora takes significant effort to enhance and protect the goodwill it has achieved in its business and in its trademarks, including by enforcing its rights in its marks, and stopping the unauthorized third-party use of its trademarks.

86.    Defendant's use of the identical mark ZORA with or without the generic term "AI," in connection with artificial intelligence-related services is highly likely to cause confusion among consumers. The mere appendage of AI to the ZORA mark does nothing to differentiate it from Plaintiff's ZORA Marks.

87.    On information and belief, the consumers and prospective consumers of Plaintiff Zora and the consumers and prospective consumers of Deloitte's AI-related offerings under the "Zora" and "Zora AI" marks are, at the least, overlapping.

88.    Defendant's offerings using Plaintiff's ZORA trademark and "Zora AI" are highly related to the goods and services offered by Plaintiff under its ZORA Marks, and Defendant's actions are likely to deceive customers and cause confusion or mistake as to, at least, whether Plaintiff has an affiliation or partnership with Deloitte with regard to Deloitte's "Zora" and "Zora AI" offerings, or whether Plaintiff has endorsed, licensed and/or provided underlying technology to Defendant for its "Zora" and "Zora AI" offerings.  Additionally, Plaintiff and Defendant operate

within competitive proximity, with overlapping marketing and provision of AI-related offerings including software. And that competitive proximity is further enhanced, and confusion very likely, considering that cryptocurrency offerings (such as those of Plaintiff) have been deeply intertwining and converging over the past years with AI-related offerings (such as those of Plaintiff and Defendant).

89.    Defendant has and continues to purposefully capitalize on the goodwill of Plaintiff's ZORA Marks through its use of Plaintiff's ZORA Marks and of the domain <<ZORA.AI>>.

90.    Defendant knowingly and willfully registered, or caused to be registered, and uses the domain <<ZORA.AI>> to capitalize on the renown of Plaintiff, and to redirect to Deloitte, consumers looking for Plaintiff and Plaintiff's goods and services.

91.    The <<ZORA.AI>> domain wholly incorporates Plaintiff's ZORA trademark and is not meaningfully different from Plaintiff's domain <<ZORA.CO>> through which Plaintiff provides goods and services, including through consumer use of Plaintiff-created and commercialized AI.

92.    On information and belief, Deloitte never published any Deloitte content generally or content related to its AI-related offerings on the <<ZORA.AI>> domain.

93.    On information and belief, Defendant registered, or caused to be registered, and is using in bad faith, the <<ZORA.AI>> domain to garner interest in and customers for the AI-related goods and services that Defendant is marketing under Plaintiff's ZORA trademark.

94.    Based on the foregoing, Defendant is liable to Plaintiff for trademark infringement under 15 U.S.C. § 1114.

95.     The aforesaid conduct of Defendant is causing monetary damages and irreparable injury to Plaintiff, including to the goodwill and reputation of its business and of the ZORA Marks. Injury to Plaintiff due to Defendant's conduct is occurring also at least because Plaintiff has no control over the quality of the goods or services Defendant is offering under Plaintiff's ZORA trademark, nor of the quality of the customer service provided in connection therewith.

96.     Defendant's acts will continue to both damage Plaintiff and deceive and harm the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

## COUNT TWO
## NEW YORK COMMON LAW TRADEMARK INFRINGEMENT

97.     Plaintiff repeats and re-alleges all paragraphs set forth in this complaint as if fully set forth herein.

98.     Plaintiff asserts that Defendant is liable for trademark infringement under New York common law, and is infringing Plaintiff's common law rights identified in this complaint for Plaintiff's ZORA trademarks, and for at least the same reasons set forth in connection with Count One.

## COUNT THREE
## UNFAIR COMPETITION UNDER THE LANHAM ACT
## (15 U.S.C. § 1125(a)(1)(A))

99.     Plaintiff repeats and re-alleges all paragraphs set forth in this complaint as if fully set forth herein.

100.    Plaintiff owns all rights in its valid and legally protected ZORA Marks, including Registration Nos. 7,692,850 and 7,724,323 for ZORA in the United States. Plaintiff has used ZORA in connection with its software-related services continuously since at least as early as February 2020, with its software-related goods since at least as early as September 2024, and in

20

connection with its cryptocurrency exchange services since at least as early as March 2020. The registered goods and services under the ZORA Marks include those that are achieved through use of AI, including AI as created, marketed and commercialized by Plaintiff. Plaintiff Zora also holds significant common law rights in the ZORA trademark, as discussed above.

101.    As a result of Plaintiff's widespread use, significant investment of time and money in advertising and promotion of its business and ZORA Marks in connection with its goods and services, the Zora business and the ZORA Marks have acquired a favorable reputation among relevant members of the purchasing public and have become a valuable symbol of Plaintiff's goodwill.

102.    Zora takes significant effort to enhance and protect the goodwill it has achieved in its business and in its trademarks, including by enforcing its rights in its marks, and stopping the unauthorized third-party use of its trademarks.

103.    Plaintiff owns all rights in its ZORA Marks and has never authorized Defendant to use the ZORA Marks. Instead, Plaintiff has repeatedly demanded that Defendant immediately cease use of "Zora" and "Zora AI" in connection with Defendant's artificial intelligence services.

104.    Defendant's unauthorized use of the ZORA Marks in connection with its own services is likely to cause confusion, or cause mistake, or deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of the services or commercial activities of Defendant by Plaintiff.

105.    Defendant is knowingly and purposefully still capitalizing on the reputation and goodwill associated with the well-known ZORA Marks and continuing to offer – and even expand – its "Zora AI" services despite cease-and-desist letters and despite Deloitte Tax serving as Plaintiff's tax advisors and on-call accountants for years.

106.    Defendant's unauthorized use of the ZORA mark (*i.e.* "Zora" and "Zora AI$^{TM}$") to promote, market, or sell its AI-related goods and services in competition with Plaintiff's goods and services, and/or with the mind of driving Plaintiff's consumers or would-be consumers to Defendant, as identified above, constitutes unfair competition in violation of 15 U.S.C. § 1125(a). Plaintiff has suffered damages as a result of Defendant's violation of 15 U.S.C. § 1125(a)(1)(A).

107.    Particularly because, even after notice and demands from Plaintiff and a years-long business relationship between Plaintiff and Defendant, Defendant continues to use "Zora" and "Zora AI" in connection with its own services and to expand them and announce plans to even further do so, it appears Defendant's acts were and continue to be intentional, wanton, willful, and committed in bad faith and with the intent to capitalize on the goodwill and reputation of the ZORA Marks, and to confuse and deceive the public for Defendant's own profit.

108.    The aforesaid conduct of Defendant is causing monetary damages and irreparable injury to Plaintiff, including to its reputation and goodwill and to the reputation of its business and the ZORA Marks. Plaintiff has also suffered injury, for example, due to Defendant's conduct at least because Plaintiff has no control over the quality of the goods or services Defendant is offering under Plaintiff's ZORA trademark, nor of the quality of the customer service provided in connection therewith. Any consumers unhappy with the goods and services provided by Deloitte under the ZORA mark (*e.g.*, "Zora" or "Zora AI$^{TM}$") may associate that unhappiness with Plaintiff Zora, and thus may cause those consumers not to use or to stop using Plaintiff's commercial goods and services, and otherwise harm Plaintiff's reputation and long-earned goodwill in its business and in its ZORA Marks.

109.    Defendant's acts will continue to both damage Plaintiff and deceive and harm the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

## COUNT FOUR
## VIOLATION OF THE ANTICYBERSQUATTING
## CONSUMER PROTECTION ACT
## (15 U.S.C. § 1125(d)(1)(A))

110.    Plaintiff repeats and re-alleges all paragraphs set forth in this complaint as if fully set forth herein.

111.    Plaintiff has been using its distinctive ZORA mark in commerce since February 2020, and holds federal registrations in the ZORA mark, as well as another allowed ZORA-comprising mark, and another soon-to-register ZORA mark, as well as common law rights in the ZORA mark as set forth above.

112.    As set forth above, Plaintiff had already gained significant renown and recognition in its ZORA mark associated goods and services since at least well before August 18, 2024, on which date the Wayback Machine archives reflect the domain <<ZORA.AI>> was still for sale.

113.    On information and belief, Defendant Deloitte was at least generally aware of Plaintiff Zora, its commercial offerings, and its trademarks before Plaintiff became a Deloitte Tax customer.

114.    On information and belief, Defendant was aware of Plaintiff Zora, its commercial offerings, and its trademarks at least as of when Plaintiff Zora became a Deloitte Tax client.

115.    Defendant has and continues to purposefully capitalize on the goodwill of Plaintiff's ZORA Marks through its use of Plaintiff's ZORA Marks and of the domain <<ZORA.AI>>.

116.    On information and belief, Deloitte only ever used the domain <<ZORA.AI>> to redirect any visitors of the <<ZORA.AI>> webpage, automatically to the Deloitte website marketing the offerings Deloitte calls  "Zora AI" or "Zora".

117.    On information and belief, visitors of the <<ZORA.AI>> webpage included and continue to include consumers of or prospective consumers looking for Plaintiff Zora's goods and services.

118.    On information and belief, these visitors who were looking for Plaintiff's website and/or goods or services, are redirected to Deloitte's website that is marketing "Zora AI" and using Plaintiff's ZORA Mark.

119.    On information and belief these redirected visitors have the false impression that Deloitte's marketed offerings of "Zora AI" and "Zora" are sponsored, authorized, licensed or endorsed by, affiliated with, or otherwise provided by or in coordination with Plaintiff Zora.

120.    On information and belief, Defendant registered, or caused to be registered, and is using in bad faith, the <<ZORA.AI>> domain to garner interest in and customers for the AI-related goods and services that Defendant is marketing under Plaintiff's ZORA trademark.

121.    On information and belief, Defendant knowingly and willfully registered, or caused to be registered, and uses the domain <<ZORA.AI>> in bad faith and to capitalize on the renown of Plaintiff, and to redirect to Deloitte, consumers looking for Plaintiff and Plaintiff's goods and services.

122.    The <<ZORA.AI>> domain wholly incorporates Plaintiff's ZORA trademark and is not meaningfully different from Plaintiff's domain <<ZORA.CO>> through which Plaintiff provides goods and services, including through consumer use of Plaintiff-created and commercialized AI.

123.    On information and belief, Deloitte never published any Deloitte content generally or content related to its AI-related offerings on the <<ZORA.AI>> domain.

124.    Defendant's use of "Zora" and "Zora AI" in connection with its goods and services – i.e. using Plaintiff's ZORA trademark without authorization – and its bad faith use of the <<ZORA.AI>> domain are all consumer-oriented conduct that is meant to create confusion and is materially misleading.

125.    Defendant is knowingly and purposefully still capitalizing on the reputation and goodwill associated with the well-known ZORA Marks despite cease-and-desist letters, and even expanding its offerings in connection with its use of "ZORA" with or without the addition of the generic term "AI" from the already highly-related artificial intelligence services it currently offers.

126.    Defendant's acts have and will continue to both damage Plaintiff and deceive and harm the public.

127.    Defendant has no legitimate claim to the <<ZORA.AI>> domain and should be required to transfer the same pursuant to 15 U.S.C. § 1125(d)(1)(C) to Plaintiff, the owner of the distinctive ZORA mark.

**COUNT FIVE**
**DECEPTIVE PRACTICES UNDER NEW YORK LAW**
**(N.Y. GEN. BUS. LAW § 349)**

128.    Plaintiff repeats and re-alleges all paragraphs set forth in this complaint as if fully set forth herein.

129.    By reason of the acts set forth above, Defendant has been engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of New York's General Business Law § 349.

130.    Specifically, Defendant's unauthorized use of the ZORA Marks, which have acquired a favorable reputation among relevant members of the purchasing public and have become a valuable symbol of Plaintiff's goodwill, is likely to cause confusion, or cause mistake,

or deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of the services or commercial activities of Defendant by Plaintiff, or vice versa.

131.    Defendant has deceptively used the trademark designation "TM" in the "Zora AI" name for its AI-related goods and services, and therefore has knowingly falsely indicated to the world that Defendant holds valid rights in the ZORA AI mark, and that – because of the renown of Plaintiff and Plaintiff's ZORA Marks – that Defendant has a relationship with Plaintiff in connection with Defendant's Zora AI offerings – when there is no relationship.

132.    Defendant has and continues to purposefully capitalize on the goodwill of Plaintiff's ZORA Marks through its use of Plaintiff's ZORA Marks and of the domain <<ZORA.AI>>.

133.    Defendant also knowingly and willfully registered, or caused to be registered, and uses the domain <<ZORA.AI>> to capitalize on the renown of Plaintiff, and to redirect to Deloitte, consumers looking for Plaintiff and Plaintiff's goods and services.

134.    The <<ZORA.AI>> domain wholly incorporates Plaintiff's ZORA trademark and is not meaningfully different from Plaintiff's domain <<ZORA.CO>> through which Plaintiff provides goods and services, including through consumer use of Plaintiff-created and commercialized AI.

135.    On information and belief, Defendant registered, or caused to be registered, and is using in bad faith, the <<ZORA.AI>> domain to garner interest in and customers for the AI-related goods and services that Defendant is marketing under Plaintiff's ZORA trademark.

136.    Defendant's use of "Zora" and "Zora AI" in connection with its goods and services – i.e. using Plaintiff's ZORA trademark without authorization – and its bad faith use of the

<<ZORA.AI>> domain are all consumer-oriented conduct that is materially misleading.

137.    Defendant is knowingly and purposefully still capitalizing on the reputation and goodwill associated with the well-known ZORA Marks despite cease-and-desist letters, and even expanding its offerings in connection with its use of "ZORA" with or without the addition of the generic term "AI" from the already highly-related artificial intelligence services it currently offers.

138.    The public is likely to be damaged because of Defendant's deceptive trade practices or acts at least because consumers across the United States can and will be deceived into believing there is a connection between Plaintiff and Defendant and between Plaintiff and Defendant's respective artificial intelligence offerings – namely a partnership, endorsement, affiliation, license by Plaintiff to Defendant, and/or provision of underlying technology to Defendant for its "Zora" and "Zora AI" offerings, when there is not.

139.    Defendant's deceptive acts affect the public interest in the state of New York because, upon information and belief, consumers located in New York can and have accessed the services offered by, and the marketing thereof, by Defendant because of Defendant's unauthorized and infringing use of Plaintiff's ZORA trademark and because of Defendant's bad faith use of the <<ZORA.AI>> domain.

140.    Plaintiff has suffered injury caused by Defendant's conduct, including through the diversion of potential sales and consumers. Plaintiff has also suffered injury due to Defendant's conduct at least because Plaintiff has no control over the quality of the goods or services Defendant is offering under Plaintiff's ZORA trademark, nor of the quality of the customer service provided in connection therewith. Any consumers unhappy with the goods and services provided by Deloitte under the ZORA mark (e.g., "Zora" or "Zora AI™") may associate that unhappiness with Plaintiff Zora, and thus may cause those consumers not to use or to stop using Plaintiff's commercial goods

and services, and otherwise harm Plaintiff's reputation and long-earned goodwill in its business and in its ZORA Marks.

141.    Plaintiff has sent multiple cease-and-desist letters to Defendant and corresponded with its counsel.  In spite of this information and Plaintiff's demands, Defendant continues to infringe the ZORA Marks and offer AI-related goods and services thereunder, and also continues to use the <<ZORA.AI>> domain to redirect to the Deloitte website which markets Deloitte's AI-related goods and services under Plaintiff's ZORA Marks – i.e. using "Zora" and "Zora AI".  The aforesaid conduct of Defendant is causing monetary damages and irreparable injury to Plaintiff, including to Plaintiff's reputation and to the goodwill and reputation of its business and the ZORA Marks. Defendant's acts will continue to both damage Plaintiff and deceive and harm the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

## COUNT SIX
## NEW YORK COMMON LAW UNFAIR COMPETITION

142.    Plaintiff repeats and realleges all paragraphs set forth in this complaint as if fully set forth herein.

143.    Defendant's unauthorized use of marks identical to ("Zora") or confusingly similar to and not meaningfully different from the ZORA Marks ("Zora AI$^{TM}$") to market, distribute, offer for sale, sell, and otherwise render its services constitutes a false description or representation that Defendant's services are authorized or provided at least in part by Plaintiff, and is thereby likely to confuse consumers.

144.    Defendant is knowingly and purposefully still capitalizing on the reputation and goodwill associated with the well-known ZORA Marks and maintaining, if not outright expanding, its use of the infringing mark, despite cease-and-desist letters, hoping to use the association of the mark to encourage Plaintiff's consumers and prospective consumers to use Defendant's own

product.

145.    Defendant's acts of unfair competition and false advertising are willful and deliberate and made with an intent to deceive consumers. Deloitte Tax has had a business relationship with Plaintiff since 2022 and Defendant could not plausibly have been unaware of Plaintiff's use of and rights in the ZORA Marks in connection with such highly similar and AI-related goods and services.

146.    Despite Plaintiff's multiple outreaches to Defendant, notifying Defendant that its uses of "Zora" and "Zora AI" are infringing and harming Plaintiff's ZORA Marks and respective goodwill in the ZORA Marks and Plaintiff's business, Defendant continues  has and continues to purposefully capitalize on the goodwill of Plaintiff's ZORA Marks through its use of Plaintiff's ZORA Marks and of the domain <<ZORA.AI>>.

147.    Defendant also knowingly and willfully registered, or caused to be registered, and uses the domain <<ZORA.AI>> to capitalize on the renown of Plaintiff, and to redirect to Deloitte, consumers looking for Plaintiff and Plaintiff's goods and services.

148.    The <<ZORA.AI>> domain wholly incorporates Plaintiff's ZORA trademark and is not meaningfully different from Plaintiff's domain <<ZORA.CO>> through which Plaintiff provides goods and services, including through consumer use of Plaintiff-created and commercialized AI.

149.    On information and belief, Defendant registered, or caused to be registered, and is using in bad faith, the <<ZORA.AI>> domain to garner interest in and customers for the AI-related goods and services that Defendant is marketing under Plaintiff's ZORA trademark.

150.    Defendant's use of "Zora" and "Zora AI" in connection with its goods and services – i.e. using Plaintiff's ZORA trademark without authorization – and its bad faith use of the

<<ZORA.AI>> domain are all consumer-oriented conduct that is materially misleading.

151.    Deloitte's unauthorized activities as discussed herein are all aimed at driving Plaintiff's customers or would-be customers to Deloitte, for goods and services that are marketed and provided under Plaintiff's ZORA trademark.

152.    Defendant's unauthorized use of Plaintiff's ZORA Marks constitutes unfair competition under the common law.

153.    Plaintiff has suffered injury due to Defendant's conduct at least because Plaintiff has no control over the quality of the goods or services Defendant is offering under Plaintiff's ZORA trademark, nor of the quality of the customer service provided in connection therewith. Any consumers unhappy with the goods and services provided by Deloitte under the ZORA mark (e.g., "Zora" or "Zora AI$^{TM}$") may associate that unhappiness with Plaintiff Zora, and thus may cause those consumers not to use or to stop using Plaintiff's commercial goods and services, and otherwise harm Plaintiff's reputation and long-earned goodwill in its business and in its ZORA Marks.

154.    The aforesaid conduct of Defendant is causing monetary damages and irreparable injury to Plaintiff, including to Zora's reputation and to the goodwill and reputation of its business and the ZORA Marks. Defendant's acts will continue to both damage Plaintiff and deceive and harm the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following relief:

1.    An Order be issued that Defendant, and any agents, servants, and employees of the same, and those persons under Defendant's control, in active concert or participation with the Defendant, are preliminarily and permanently enjoined and restrained from:

a. Using "ZORA," "ZORA AI," or any variations or spellings that are confusingly similar thereto, either aurally or in written form, as a service mark, trademark, trade name, domain name, or component thereof, or otherwise, whether with or without stylization, other words, or designs, to mark, promote, advertise or identify or describe Defendant's business or goods and services;

b. Using the domain <<ZORA.AI>> or any other confusingly similar domain;

c. Otherwise infringing Zora's ZORA Marks; and

d. Using misleading advertising or other materials, including social media accounts, to suggest affiliation or association with, license or sponsorship or endorsement by Plaintiff of Defendant or Defendant's goods and/or services, or to suggest provision of technology by Plaintiff for Defendant's goods and/or services offered in connection with "Zora" or "Zora AI" when no such affiliation, association, license, sponsorship or endorsement, or provision of technology, exists.

2. An Order be issued pursuant to the Lanham Act, 15 U.S.C. § 1125(d)(1)(C), that Defendant transfer or caused to be transferred the domain <<ZORA.AI>> to Plaintiff Zora, within five (5) days of the issuance of that Order;

3. An award to Plaintiff of its actual damages, in an amount to be proved at trial; trebled pursuant to 15 U.S.C. § 1117(a), arising out of Defendant's acts of willful trademark infringement and unfair competition;

4. An award to Plaintiff of its actual damages, in an amount to be proved at trial, trebled pursuant to N.Y. GEN. BUS. LAW § 349(h), arising out of Defendant's acts of willful deceptive trade practices;

5.    An award to Plaintiff of its reasonable attorneys' fees and costs associated with enforcement of its trademark rights and this action; and

6.    Punitive damages and such other and further relief as this Court deems just and proper.

## JURY DEMAND

Zora respectfully demands a jury trial on all claims and issues so triable.

DATED: June 11, 2025                                    Respectfully submitted,

                                                        BROWN RUDNICK LLP

                                                        By: _/s/ Merri C. Moken_____

                                                        Merri C. Moken
                                                        Seven Times Square
                                                        New York, NY 10036
                                                        (212) 209-4838
                                                        mmoken@brownrudnick.com


                                                        *Attorney for Plaintiff Zora Labs, Inc.*

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I, Jacob Horne, declare under the penalty of perjury:

1.    I am the Founder and CEO of Plaintiff Zora Labs, Inc.

2.    I have read the foregoing Verified Complaint and know the contents thereof; and

3.    I believe the matters to be true based on personal knowledge and on documents and information obtained from employees and representatives of Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Date: June 11, 2025

New York, New York

Respectfully Submitted,

Jacob Horne