UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZORA LABS, INC.,

                     Plaintiff,

-against-

DELOITTE CONSULTING, LLP,

                     Defendant.

25-CV-4930 (AS)

OPINION AND ORDER

---

ARUN SUBRAMANIAN, United States District Judge:

Zora Labs, Inc. is a "web3 platform[] on which users can create, buy, sell, curate, and view social media content and other digital assets on the blockchain." Dkt. 8 at 2. Deloitte Consulting, LLP is a "provide[r] [of] industry-leading consulting and advisory services" that "recently launched its newest AI initiative, an advanced agentic AI platform" named Zora AI. Dkt. 20 at 2–3. Zora Labs is suing Deloitte over Zora AI, alleging trademark infringement, unfair competition, cyberpiracy, unauthorized use of a trademark, and deceptive trade practices under the Lanham Act and state law. While its lawsuit is pending, Zora Labs asks the Court for a temporary restraining order and preliminary injunction that prevents Deloitte from using "Zora" or "Zora AI" in any way. For the reasons below, Zora Labs's motion is DENIED.

## LEGAL STANDARD

"A preliminary injunction 'is one of the most drastic tools in the arsenal of judicial remedies." *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 298 (S.D.N.Y. 2021) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). It "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *Id.* (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)).

"It is well established that in this Circuit the standard for entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (citing *Echo Design Grp., Inc. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003)).

## DISCUSSION

### I.   Zora Labs has not shown a likelihood of success on the merits.

"To prevail on a trademark infringement claim under [the Lanham Act], a plaintiff must demonstrate that 'it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion.'" *Time, Inc. v. Peterson Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999) (citation omitted). Deloitte doesn't challenge the validity of Zora Labs's mark. Instead, the parties disagree on the likelihood of confusion. And while Zora Labs also asserts state law claims under New York law, its argument for success on the merits focuses exclusively on the Lanham Act. *Cf. Two Hands IP*, 563 F. Supp. 3d at 301–02 (noting that "courts use substantially the same standard for claims for trademark infringement under the Lanham Act, unfair competition under the Lanham Act, trademark infringement under New York State law, and unfair competition under New York State law").

The *Polaroid* factors govern the Court's evaluation of the likelihood of confusion. These are: "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (citation omitted). Application of this test is "not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Id.* (citation omitted).

Zora Labs argues that the *Polaroid* analysis is not relevant here because "when the marks and goods are nearly identical . . . the focus in [this step] . . . shifts from the likelihood of confusion to basic rules of trademark priority." Dkt. 8 at 13 (internal quotations omitted) (quoting *Menashe v. V Secret Catalogue, Inc.*, 409 F. Supp. 2d 412, 422 (S.D.N.Y. 2006)). But as Deloitte points out, *Menashe* was a declaratory-judgment case where the central dispute between the parties was over who had priority; the relatedness of the products was not contested. Indeed, the products were in the exact same category—women's underwear and lingerie. This case is different: the parties agree that Zora Labs used its mark first, but they disagree about the connection between the products at issue. Zora Labs points to no case indicating that infringement is simply presumed in this situation. The *Polaroid* factors apply, and at this stage, Zora Labs cannot demonstrate a likelihood of confusion.

As to the strength of the mark, Zora Labs argues merely that it is "entitled to a *prima fac[i]e* presumption of validity and strong and distinctive goodwill accrued in connection with the pertinent goods sold and services rendered." Dkt. 8 at 14. But as Deloitte points out, validity and strength are distinct. To evaluate strength, courts "begin[] with inquiry as to whether the mark has the inherent distinctiveness that would entitle it to protection in the absence of secondary meaning." *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005). Here, Deloitte says that "Zora" is a personal name, and "[f]or the purpose of trademark analysis, personal names . . . are

generally regarded as descriptive terms." *815 Tonawanda St. Corp. v. Fay's Drug. Co.*, 842 F.2d 643, 648 (2d Cir. 1988). But "[w]hen a mark that is a first name signifies something *other than* just a first name, the mark may be categorized as stronger than merely a descriptive mark." *Marlinspike Hall LLC v. Bar Lab Concepts LLC*, 2023 WL 6847208, at *3 (S.D.N.Y. Oct. 17, 2023). As Deloitte itself admits, "Zora" also "means 'dawn' in several languages," hinting at the beginning of a new and promising technological development. Dkt. 20 at 3. Given this other meaning, "Zora" is suggestive, and "[s]uggestive marks . . . are inherently distinctive." *Two Hands IP*, 563 F. Supp. 3d at 303 (citing *Star Indus.*, 412 F.3d at 385). But "suggestive marks are not necessarily distinct in the marketplace," *id.*, and "suggestiveness is not necessarily dispositive of the issue of the strength of the mark without a showing of secondary meaning," *Gameologist Grp, LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 158 (S.D.N.Y. 2011). "The burden is on the plaintiff to prove such market distinctiveness with reference to this circuit's well-established secondary meaning factors," which are: "(1) advertising and promotional expenses; (2) consumer studies linking the mark to the source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use." *Two Hands IP*, 563 F. Supp. 3d at 303 (citation omitted). Zora Labs hasn't provided much support for these factors beyond conclusory assertions of the company's commercial strength. In addition, Zora Labs only started using its Zora mark in connection with AI in 2024, and in connection with software and cryptocurrency in 2020. Dkt. 8 at 4–5. In *Two Hands IP*, use of the mark for seven years wasn't a "sufficiently long time," and Zora Labs's usage is even shorter. 563 F. Supp. 3d at 303. This first factor does not support Zora Labs.

The second factor, similarity of the marks, favors Zora Labs. "In considering this factor, we look to two key questions: 1) whether the similarity between the two marks is likely to cause confusion and 2) what effect the similarity has upon prospective purchasers. In deciding whether the marks are similar as used, we do not look just at the typewritten and aural similarity of the marks, but how they are presented in the marketplace." *Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F. 3d 955, 962 (2d Cir. 1996) (citation omitted). Both parties call their product "Zora." And Deloitte's domain, Zora.ai, is nearly identical to Zora Labs's domain, zora.co. While the branding and color schemes are different when the marks are presented in the marketplace, the names are clearly the same or basically the same, and courts have focused on whether the "dominant words in two marks are the same." *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 294 (S.D.N.Y. 2012). "[C]onsidering the identical nature of the word marks, the similarity factor weighs in favor of the plaintiff." *Two Hands IP*, 563 F. Supp. 3d at 305.

The proximity factor weighs against finding a likelihood of confusion. This factor has "two elements, market proximity and geographic proximity." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 134 (2d Cir. 2004). "Market proximity asks whether the two products are in related areas of commerce[,] and geographic proximity looks to the geographic separation of the products." *Id.* The central question is whether "the two products have an overlapping client base." *Id.* Zora Labs says that the "goods and services are highly related, in that both . . . offer software-related goods and services, including AI-related goods and services." Dkt. 8 at 15. But Deloitte

3

correctly identifies numerous differences between the products and their markets. Zora Labs's primary product offering is an NFT marketplace. Deloitte's product is a business-to-business solution, tied to SAP and marketed to large institutional clients seeking AI assistance with complex business tasks. There is little overlapping client base here, and the only connection between the two products is that they both utilize software and AI. If that were sufficient to establish proximity, most products available in today's tech-driven economy would be proximate.

The fourth factor, bridging the gap, "involves a determination of the likelihood that the plaintiff will enter the defendants' business or of the average customer's perception that the plaintiff would enter the defendants' market." *Two Hands IP*, 563 F. Supp. 3d at 306. Zora Labs says that there is "no gap to be bridged" because of the proximity between the two products. Dkt. 8 at 15. It also asserts that it has "look[ed] into an investigation on R&D in connection with using agentic AI in-house." 7/9 Tr. at 32. But that's far from the workforce-automation market that Deloitte operates in, and Zora Labs has not put forth any evidence that it is or ever would be interested in entering that market. Nor has Zora Labs shown that it would have the capacity to develop a competing product in that market. *See* Dkt. 31 ¶ 10 (stating that a single Zora Labs staff member has responsibility for "developing an agentic AI tool"); 7/9 Tr. at 38 ("Deloitte has over 170 developers" working on its product and spent "over $70 million" on development). Again, this factor favors Deloitte.

The fifth factor, actual confusion, is neutral at best. "To show actual confusion, [plaintiff] must demonstrate that [defendant's] use 'could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation.'" *Sports Auth.*, 89 F.3d at 963 (citation omitted). On reply, Zora Labs identifies two instances in which individuals appeared to confuse Deloitte's Zora product with Zora.ai. Dkt. 29 at 3–4; Dkt. 30-1. However, these two isolated posts have just a smattering of views, and there is no evidence that they led to Zora Labs losing any customers, goodwill, or business opportunities. Dkt. 30-1; Dkt. 30 ¶ 3. "[I]nstances of general mistake or inadvertence," including instances where "users accidentally 'tagg[ed]' [one party's product] on social media, while intending to tag [the other party]," "do not suggest that those potential consumers in any way confused [the parties'] products, let alone that there was confusion that could lead to a 'diversion of sales, damage to goodwill, or loss of control over reputation.'" *Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 397 (2d Cir. 2021) (citation omitted). These instances don't show actual confusion in a way that moves the needle.

Bad faith is the sixth factor. It "generally refers to an attempt by a junior user to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Star Indus.*, 412 F.3d at 388. "Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark," *id.* at 389, but "awareness of the plaintiff's mark does not [necessarily] mean that [the defendant] acted in bad faith." *Two Hands IP*, 563 F. Supp. 3d at 307. Zora Labs's claim that Deloitte acted bad faith is based on a few different things: that Zora Labs was a Deloitte Tax client for years, and that Deloitte didn't apply for a trademark in "Zora" or "Zora AI." Dkt. 8 at 16. Zora Labs also points to Deloitte's use of the "TM" trademark designation for "Zora AI," Deloitte Tax's termination of

4

Zora Labs's engagement, and Deloitte's recent application for an extension of time to oppose Zora Labs's trademark application No. 98910185 for ZORA. *Id.*; Dkt. 29 at 4.

Deloitte responds that there is "no credible evidence" that it intended to exploit Zora Labs's goodwill or reputation and that there is no requirement of registration to protect a trademark. Dkt. 20 at 22–23. In fact, Deloitte says, Zora Labs's reputation is "very, very far from the image that Deloitte wants its own image to be." 7/9 Tr. at 19. "[I]n the absence of . . . evidence indicating an intent to promote confusion or exploit good will or reputation, [the Second Circuit] has found the junior user to be in good faith" even if there was "knowledge of the earlier mark." *Star Indus.*, 412 F.3d at 388. Furthermore, given the (1) different nature of the companies' businesses—one directed primarily to individual consumers, the other to large companies employing SAP; (2) the different nature of the products being offered—one primarily concerning NFTs and the other to business-workflow solutions; and (3) the different size and scope of the companies' operations, it seems "implausib[le] . . . that [Deloitte] would seek to conflate its products with those of a" much smaller company. *Id.* at 389. "[A]ny confusion would [likely] have redounded to the plaintiff's, rather than the defendant's, benefit." *Id.* (second alteration in original) (citation omitted). Zora Labs may develop further evidence showing Deloitte's bad faith, but at this stage, this factor does not favor Zora Labs.

On the seventh factor, quality of the product, Zora Labs says it is "unable to assess" Deloitte's product and that the factor should "considered neutral," Dkt. 8 at 18, although it also claims that Deloitte's "track record [with other products] . . . is decidedly negative." Dkt. 29 at 10. "This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995) (citation omitted). There is no evidence that Deloitte's product is of low quality, so this factor is neutral.

Finally, the eighth factor, consumer sophistication, favors Deloitte. "In considering the sophistication of consumers, a court must evaluate the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Two Hands IP*, 563 F. Supp. 3d at 308 (cleaned up). "In general, greater sophistication of consumers reduces the likelihood of confusion." *Id.* Zora Labs argues that its products are "made available to consumers at every level of sophistication." Dkt. 8 at 17. Deloitte responds that its consumers are "highly sophisticated . . . Fortune 500 and 'enterprise' clients using cutting-edge enterprise software systems." Dkt. 20 at 12. Deloitte also points out that Zora Labs's consumers are "sophisticated in their own right" as "crypto-savvy, tech-literate creators and developers" who know how to "carry out cryptocurrency transactions via Ethereum, the only payment type [Zora Labs] appears to accept." *Id.* at 14–15. An "ordinary purchaser" of either party's product is sophisticated enough to differentiate between the two Zoras.

Balancing the *Polaroid* factors at this stage, Zora Labs has failed to make any showing, let alone a "clear" one, of the likelihood of confusion. Zora Labs points to *Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*, 2025 WL 764373 (S.D.N.Y. Mar. 10, 2025) for the proposition

that not all factors need to favor the movant for the Court to find that preliminary relief is appropriate. 7/9 Tr. at 34–35. That is of course true, but beside the point. The evaluation of all the factors in this case—including proximity, bridging the gap, actual confusion, and consumer sophistication—points against a finding of likelihood of confusion. As for *Amplify*, in that case "the services were identical" and the parties were "in the same market, [selling] to the same exact consumers." *Id.* at 35–36. That's far from the case here. *Amplify* also included evidence that the defendant had deliberately purchased web domains to force competitors to buy them back. 2025 WL 764373, at *2–3. There's been no similar showing of bad faith by Deloitte. Zora Labs also cites *Ultra Records, LLC v. Ultra Int'l Music Publ'g, LLC*, 2024 WL 3678432 (S.D.N.Y. Aug. 6, 2024), as one of its "best case[s]." 7/9 Tr. at 34, 43. But *Ultra* was decided at the summary judgment stage, not on a motion for a preliminary injunction or temporary restraining order. This Court held in *Ultra Records* that there were genuine issues of material fact on the question of proximity and denied summary judgment on that basis. *Id.* at *2. Proximity is only one of the factors at issue on Zora Labs's application. Neither *Amplify* nor *Ultra* counsels in favor of a finding that Zora Labs has a likelihood of success in this case.

## II.     Zora Labs has not shown irreparable harm.

For the reasons above, Zora Labs can't demonstrate irreparable harm based solely on the likelihood-of-confusion analysis. The only other harm Zora Labs identifies is the loss of "substantial time and resources [invested] over the last five and a half years in building the reputation and goodwill associated with its business and the ZORA Marks." Dkt. 8 at 18. But "conclusory statements of loss of reputation and goodwill constitute an insufficient basis for a finding of irreparable harm." *Atari Interactive, Inc. v. Printify, Inc.*, 714 F. Supp. 3d 225, 238 (S.D.N.Y. 2024) (citation omitted).

There is no other basis for a finding of irreparable harm. Here, the Court considers Zora Labs's delay in bringing its motion for injunctive relief, which came four months after it sent a cease-and-desist letter to Deloitte. Dkt. 8 at 9–10. As Zora Labs's own briefing shows, Deloitte rebuffed Zora Labs's overtures at every turn, and there was no valid basis to wait so long before bringing an emergency *ex parte* motion for a temporary restraining order, complaining of imminent harm to Zora Labs's business operations. *See Two Hands*, 563 F. Supp. 3d at 300–01 (citing cases finding a delay of just ten weeks cuts against a finding of irreparable harm, and noting that "[a]ttempts to settle can provide a buffer only when there is a prospect of resolution, and there has been no such showing here").

And just as in *Two Hands*, "[t]he plaintiff concedes that there is no evidence that the defendants' services or goods are of inferior quality, and there is no evidence to suggest that the few instances of consumer confusion have caused consumers to alter their purchasing decisions." *Id.* at 301. Zora Labs fails to make a showing of irreparable harm.

**III.     Zora Labs has not shown that a preliminary injunction is in the public interest or that the balance of equities favors an injunction.**

"In determining whether the balance of the equities tips in the plaintiff's favor and whether granting the preliminary injunction would be in the public interest, the Court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Two Hands IP*, 563 F. Supp. 3d at 308 (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008)). Zora Labs's arguments on this factor rest on the assumption that it will prevail on likelihood of success and irreparable harm. Given that Zora Labs failed to make those showings and Deloitte's Zora AI product has been launched, it would be inequitable to force Deloitte to withdraw or change its offering while this case is ongoing. Instead, to the extent that Zora Labs demonstrates an entitlement to relief at trial, it can seek monetary damages to remedy any harm it has suffered.

## CONCLUSION

For the reasons stated above, Zora Labs's motion for a temporary restraining order and preliminary injunction is DENIED. But the Court urges the parties to consider whether there are relatively simple fixes, for example altering the Deloitte domain "zora.ai," that could ease the conflict between the two parties before they invest further time and resources on this litigation.

The Clerk of Court is directed to terminate Dkt. 6.

SO ORDERED.

Dated: July 28, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge